UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 10-30570-WRS
                                                   Chapter 7
INNES T. McINTYRE,

      Debtor

DANIEL G. HAMM, Chapter 7 Trustee,

      Plaintiff                                Adv. Pro. No. 11-3097-WRS

  v.

INNES T. McINTYRE IV, et al,

      Defendants

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for hearing on all pending motions on December 11, 2012. The Defendants have filed motions to dismiss the complaint, (Docs. 23, 24), and the Plaintiff has filed two motions to compel, (Docs. 27, 28). In addition, the Defendants have filed a motion to withdraw the reference of this Adversary Proceeding with the District Court. For the reasons set forth below, the motions to dismiss are GRANTED as to Count X of the Complaint and DENIED as to the remaining Counts. Ruling on the motions to compel is DEFERRED pending further proceedings. The Bankruptcy Court will bifurcate proceedings as described in Part II below. The Bankruptcy Court will recommend that the District Court deny the motion to withdraw the reference in part and grant in part, as described in more detail in Part IV. In Part V, the Court will defer ruling on the motions to compel, ordering the parties to confer and report to the Court.

The Bankruptcy Court will divide its discussion of the issues here into five parts. First, the Court will discuss the history of these proceedings. Second, the Court will analyze the Trustee's ten-count complaint and explain why it proposes to bifurcate proceedings into two parts. Third, it will discuss the Defendants' motion to dismiss. Fourth, it will discuss the Defendants' Motion to Withdraw the Reference and Demand for Jury trial and make a recommendation. Fifth, the Court will discuss the Plaintiff's motions to compel.

## I. HISTORY OF THESE PROCEEDINGS

On March 8, 2010, Defendant Innes McIntyre (Innes) filed a petition in bankruptcy pursuant to Chapter 11, initiating Case No. 10-30570. On September 20, 2010, Innes converted his Chapter 11 case to a case under Chapter 7. On October 21, 2010, Plaintiff Daniel G. Hamm was appointed the Chapter 7 Trustee. At approximately the same time, McIntyre Building, Inc., which is owned by Innes, filed a petition in bankruptcy pursuant to Chapter 11, initiating Case No. 10-30558. The McIntyre Building case was also converted to a case under Chapter 7.

On April 15, 2010, McIntyre Land Company, Inc., a Defendant here, filed an Adversary Proceeding against Branch Banking and Trust, initiating Adversary Proceeding 10-3029. That matter was tried by the undersigned on January 26, 2012, and resulted in the filing of Proposed Finding of Fact and Conclusions of Law. (Case No. 10-3029, Doc. 156). McIntyre Land filed objections and that matter is now pending before the District Court under Civil No. 12-CV-555-

2

MHT. While the issues tried in the instant Adversary Proceeding are distinct from those in 12-CV-555, many of the same parties are involved and there are a number of common issues of fact.

The Defendants in this Adversary Proceeding have moved to withdraw the reference pursuant to Bankruptcy Rule 5011. (Doc. 4). That motion is pending before the District Court in proceedings under Case No. 12-MC-3588-MHT. The Bankruptcy Court will make a report and recommendation on the motion to withdraw the reference to the District Court in Part IV below.

## II. ANALYSIS OF THE COMPLAINT AND BIFURCATION OF THIS ADVERSARY PROCEEDING

Trustee Hamm has filed a ten-count complaint seeking a broad array of relief. (Doc. 1). The Court will first consider each of the ten counts of the complaint separately. Upon analysis of the complaint, the Court will conclude that the trial of this matter should be bifurcated, with Counts I and VI to be trial first and the remaining Counts considered afterwards.

In Count I of the complaint, the Trustee contends that McIntyre Land, Inc., is owned by Innes McIntyre–and therefore is property of the estate, subject to administration by the Trustee ultimately to be liquidated with the proceeds distributed to creditors. 11 U.S.C. § 541 (Property owned by debtor at time petition is filed becomes property of the estate). In Paragraph 12 of the Complaint, the Trustee alleges that McIntyre Land was formed by Innes in 1999, and that he was the sole shareholder. (Doc. 1). In Paragraph 15 of the Complaint, the Trustee alleges that Innes contends that he sold McIntyre Land to his wife, Mitzi, for $1.00 in the year 2000. The Trustee, on the other hand, contends that Innes did not in fact sell McIntyre Land to Mitzi and that Innes is the true owner of McIntyre Land. It is this dispute–whether Innes or Mitzi owns McIntyre

3

Land–which is at the center of Count I of the Complaint. Much of what follows in the remaining counts, hinges on this determination.

In Counts II, III, IV and V, the Trustee alleges that cash transfers totaling $546,733.72 were made by McIntyre Land to Mitzi at various times, the earliest having been made in 2004, while the latest was made after the petitions in bankruptcy were filed in 2010. The Trustee seeks a money judgment against Mitzi, in the amount of $546,733.72, alleging that the transfers were either fraudulent transfers or avoidable post-petition transfers. It is apparent that if the Trustee loses on Count I of his complaint, Counts II, III, IV and V necessarily fall of their own weight. In other words, if Mitzi, and not Innes, is found to be the true owner of McIntyre Land, then by definition a cash transfer from McIntyre Land to Mitzi cannot be a fraud on the creditors of Innes. However, if the Trustee prevails on Count I, he may then proceed with his fraudulent conveyance case against Mitzi. Therefore, it makes sense to try Count I first, and hold Counts II, III, IV and V in abeyance pending a ruling on Count I.

In Count VI of the Complaint, the Trustee seeks "turnover" of certain property, citing 11 U.S.C. § 542. Count VI and Count I are directly related. Count I seeks a determination that Innes actually owns McIntyre Land and Count VI seeks turnover of that property to the Trustee. If the Trustee fails on Count I, Count VI becomes moot. On the other hand, if the Trustee prevails under Count I, Count VI seeks the remedy of turnover. Because Count VI relates directly to Count I, it makes sense to try them together.

In Count VII of the Complaint, the Trustee seeks to impose liability pursuant to 11 U.S.C. § 550. Section 550 of the Bankruptcy Code provides the Trustee a variety of remedies in the event he manages to avoid transfers pursuant to a number of provisions of the Bankruptcy Code,

4

including Sections 544, 548 and 549, which are those central to Counts II, III, IV, and V. Count VII must necessarily be considered in conjunction with Counts II, III, IV and V as it does not constitute an independent cause of action, but rather alternate remedies in the event that a fraudulent conveyance is found or a transfer is avoided.

In Count VIII, the Trustee seeks what he calls a "sale for division," which is a State Law remedy. ALA. CODE § 35-6-20 (1975). The Trustee also cites 11 U.S.C. § 363. It appears that in this context, the Trustee is considering § 363(h), which permits the Trustee to sell both the estate's interest in property as well as the interest of a co-owner, under certain specified conditions. When a Trustee does so, he must bring an adversary proceeding against the co-owner. Bankruptcy Rule 7001(3). The Trustee alleges in Paragraphs 33, 34 and 35, that Innes actually owns an interest in the marital residence, which is located at 5580 Woodside Circle, Montgomery, Alabama. Thus, the Trustee seeks a determination as to what that interest actually is (e.g., 50%) and then to sell the entire residence, keeping the estate's interest and paying over to Mitzi her share, if any.

Count IX of the Complaint is an objection to Innes' discharge, pursuant to 11 U.S.C. § 727. The Trustee alleges fraud, false oath, the withholding of recorded information from the Trustee, the destruction of or failure to keep recorded information and a host of other things which are proscribed by § 727(a). While the facts alleged in Count IX overlap considerably with other Counts, the cause of action is distinct from all others.

Count X of the complaint seeks a determination that certain debts owed by Innes should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B). The Trustee alleges that Innes provided false financial statements to twelve named banks and that the debts owed them should

5

Case 11-03097    Doc 33    Filed 03/08/13    Entered 03/08/13 15:29:53    Desc Main
Document      Page 5 of 19

be excepted from discharge. As will be set out in more detail in Part III below, the Court will find that the Trustee does not have standing to bring this cause of action will grant the Defendants motion to dismiss with respect to Count X.

Having analyzed the complaint, it appears that trial of the Trustee's claims should be bifurcated, with Counts I and VI to be tried first. If the Trustee does not prevail on Counts I and VI, then it would appear that most, if not all, of the remaining Counts should be dismissed. While the simplification of the issues is a sufficient reason to bifurcate this Adversary Proceeding, a second reason is also present. As is discussed in more detail in Part IV below, the Defendants have demanded trial by jury. Because the Defendants are not entitled to trial by jury on Counts I and VI, and because they are entitled to a jury trial on the Counts where the Trustee is seeking a money judgment (i.e. Counts II, III, IV and V), bifurcation is a reasonable resolution. Therefore, the Bankruptcy Court proposes to try Count I and VI first, and then evaluate what, if anything, remains to be tried.

### III. THE MOTIONS TO DISMISS

The Defendants have moved to dismiss the Trustee's complaint as to all counts. (Docs. 23, 24). For the reasons set forth below, the motions are denied except as to Innes' motion to dismiss as it relates to Count X of the Complaint.

The Defendants motions are made pursuant to Fed. R. Civ. P. Rule 12(b)(6), as made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 7012. The United States

6

Court of Appeals for the Eleventh Circuit recently discussed the standard to be applied when considering such a motion.

> Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8's pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." A complaint that provides "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is not adequate to survive a Rule 12(b)(6) motion to dismiss. Rather, "to survive . . . a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A facially plausible claim must allege facts that are more than merely possible. Factual allegations that are "'merely consistent with 'a defendant's liability'" fall short of being facially plausible. The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth.

Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).

With this standard in mind, the Court will consider the Defendants motions to dismiss. As the motions are identical, the Court will refer to the motion to dismiss filed by Innes. Innes seeks to dismiss Count I of the complaint contending that Alabama Law does not recognize a cause of action for piercing the corporate veil. First, it is Federal law and not State law which governs here. Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1283 (11th Cir. 1998) (finding that federal law governs what is property of the estate, with state law applying only to determine the nature of a debtor's property interest.); see also Butner v. United States, 440 U.S. 48, 54, 99 S. Ct. 914, 918 (1979) (A bankruptcy court looks to state law only to determine extent of a debtor's interest in property). Second, labels and conclusions contained in

7

pleadings are not binding on the court. Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) ("We are not, however, required to accept the labels and legal conclusions in the complaint as true.") (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions.")) This rule works both ways. While, a label does not save an otherwise insufficient complaint, likewise, where the complaint is otherwise sufficient, an unfortunately chosen label is not fatal.

In Part II above, the Court discussed Counts I and VI of the complaint. Ignoring for a moment the labels chosen by the Trustee, it is clear enough that the Trustee contends that Innes and not Mitzi is the true owner of McIntyre Land. In Count I, the Trustee seeks a finding to that effect. In Count VI, he seeks turnover of property of McIntyre Land pursuant to 11 U.S.C. § 542. Reading the complaint in that light, it appears that the factual allegations are more than sufficient to apprise the Court and the Defendants what the Trustee seeks. For example, it is alleged in the complaint that Innes formed McIntyre Land in 1999 and that he was then the sole shareholder. The Trustee alleges that Innes has stated that he sold the shares of McIntyre Land to Mitzi for $1.00 in the year 2000. The Trustee further alleges that the alleged sale did not actually take place and that Innes still owns the stock of McIntyre Land.

It is well established that a Bankruptcy Court may determine what constitutes property of the bankruptcy estate. Upon creation of the bankruptcy estate through 11 U.S.C. § 541, the Bankruptcy Court has "exclusive jurisdiction over property of the estate," which necessarily "includes jurisdiction to decide whether disputed property is, in fact, property of the estate." In re BankUnited Fin. Corp., 462 B.R. 885, 894 (Bankr. S.D. Fla. 2011) (citations omitted). For

example, in Hunger, 272 B.R. 792 (Bankr. M.D. Fla. 2002), the Bankruptcy Court considered whether a debtor's interest in a trust was property of the estate pursuant to § 541, and ultimately determined that the property was excluded from the estate pursuant to § 541(c)(2). In Wood, 205 B.R. 324 (Bankr. M.D. Fla. 1996), the Bankruptcy Court determined that a promissory note was property of the bankruptcy estate. In Argiannis, 183 B.R. 307 (Bankr. M.D. Fla. 1995), the Bankruptcy Court determined that certain farm land was property of the bankruptcy estate. As Count I is a proceeding to determine whether McIntyre Land is property of the estate, the Defendants' argument that the Trustee's allegations are insufficient as a matter of law is without merit.

The Defendants seek dismissal of Counts II and III, arguing that because neither McIntyre Land nor Mitzi are debtors there can be no fraudulent conveyance case. The Trustee aptly notes in his memorandum that the Defendants have overlooked one of the primary aims of this Adversary Proceeding. If it is determined that McIntyre Land is an instrumentality of Innes–in other words that transfers made by McIntyre Land are actually transfers made by Innes–then transfers made by McIntyre Land may well be fraudulent transfers. The Defendants' arguments to the effect that Counts II and III should be dismissed are without merit. The Defendants also argue that Counts II and III should be dismissed because the Trustee lacks standing to bring fraudulent conveyance suits. Contrary to the Defendants' argument, a trustee in bankruptcy has standing to bring a fraudulent conveyance suit. 11 U.S.C. § 544(b); Mennen v. Onkyo Corp., 248 Fed. Appx. 112, 113 (11th Cir. 2007) ("'[I]f a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.") (citation omitted); In re Pearlman, 472 B.R. 115, 121 (Bankr. M.D. Fla. 2012) ("It is well recognized that Bankruptcy Code § 548 and 544

9

confer standing on trustees to bring actions to recover fraudulent transfers, both under bankruptcy and state law."). The Defendants' claim that the Trustee lacks standing to bring Counts II and III is without merit.

The Defendants argue that some, or all, of the claims in Count III are "stale" and should, for that reason, be dismissed. (Doc. 23, pp. 7-9). By that, they mean that the Trustee's claims are barred by the statute of limitations, which they contend is only one year. The Trustee responds that the period of limitations has been tolled as a result of the parties' active concealment of the fraud. The complaint makes sufficient factual allegations of fraud and concealment to state such a claim. To be sure, the Defendants may ultimately prevail on their defense of the statute of limitations, however, in the context of a motion to dismiss the Court is bound to accept as true the well pleaded facts of the complaint.

Innes argues that the Trustee does not have standing to bring Count X of the complaint, which seeks a determination that Innes' indebtedness to 12 named banks should be excepted from the discharge pursuant to 11 U.S.C. § 523(a)(2)(B). As the Trustee does not have standing to bring a § 523 action in this case, the motion to dismiss should be granted with respect to Count X. See Cundiff v. Cundiff (In re Cundiff), 227 B.R. 476, 478 (B.A.P. 6th Cir. 1998) ("[A] trustee does not have standing to file a complaint to determine dischargeability in the case in which the trustee serves."); see also Fed. R. Bankr. P. 4007(a) (listing persons entitled to file a dischargeability complaint as "a debtor or any creditor"); but see Guttman v. Fabian (In re Fabian), 2010 WL 1172950 at *4 (Bankr. D. Md. March 22, 2010) (stating that "a trustee of one bankruptcy estate has standing to file a complaint to determine dischargeability in another bankruptcy case.") (quoting Cundiff, 227 B.R. at 478).

10

The Defendants argue that Count VIII should be dismissed on the basis that facts alleged do not state a claim for a sale for division under Alabama law. As discussed in Part II above, the Court will construe Count VIII as an action pursuant to 11 U.S.C. § 363(h). The complaint describes the property and names the interested parties. The Trustee tartly notes in his complaint that Innes has over $25 million in debt and no property of any value, while Mitzi seems to own considerable property in her name. The Trustee's contention, that at least a share of the residence should be determined to be his and, if so, sold, meets the plausibility standard set out in Ashcroft. See also Carnival Corp., 693 F.3d at 1337. To be sure, Innes does not own any interest of record, as legal title is solely in Mitzi's name, however, the Bankruptcy Court is not bound by form in which title is held.

The Defendants contend generally that the complaint should be dismissed because it lacks specificity as to all of the claims, and more specifically as to the fraud claims because the Trustee fails to meet the heightened pleading standard required for claims of fraud under Fed. R. Civ. P. Rule 9(b). Considering the complaint as a whole, the Court rejects this claim. It is alleged in the complaint that Innes has filed bankruptcy, seeking to discharge $25 million in debt, while purporting to own almost nothing. The Trustee contends that Innes in fact owns McIntyre Land and that his claim that he sold it to Mitzi is a sham, perpetrated to default creditors of Innes. The Trustee further contends that more than $400,000.00 was siphoned out of Innes' estate through McIntyre Land as part of this fraud. Contrary to the arguments of the Defendants, the Trustee has alleged a wealth of facts that, if proven to be true, could plausibly result in judgment in favor of the Trustee. Except as to Count X, which will be dismissed by way of a separate order, the Defendants' motion to dismiss will be denied.

# VI.  THE DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE AND DEMAND FOR JURY TRIAL

The Defendants have moved to withdraw the reference and made a demand for trial by jury.  That matter is now pending before the District Court under Case No. 12-MC-3588-MHT.  In this Part, the undersigned will discuss the interconnection of that motion with the remainder of these proceedings and make a recommendation to the District Court consistent with the remainder of this Memorandum.

Congress has vested all jurisdiction over bankruptcy matters to the District Courts.  28 U.S.C. § 1334.  In turn, Congress has authorized the District Courts to refer bankruptcy proceedings to the Bankruptcy Judges who constitute the Bankruptcy Courts, which are a unit of the District Courts.  28 U.S.C. § 157.  In other words, the jurisdiction of the Bankruptcy Courts over bankruptcy proceedings is derivative of the grant of jurisdiction to the District Courts.  Section 157 does not limit the District Court's authority or discretion to take back from the Bankruptcy Courts matters which have been referred.   In this Adversary Proceeding, the Defendants have demanded trial by jury and have not consented to trial by jury before the bankruptcy judge under § 157(e).  If the Defendants have a right to a jury trial, then by timely demanding trial by jury and by failing to consent to trial before the Bankruptcy Court, it follows then that the District Court must withdraw the reference from the Bankruptcy Court and hear any matter for which the Defendants have a right to a trial by jury in this proceeding.  See DePaola v. Price, (In re Price), 2007 WL 2332537 (M.D. Ala. Aug. 13, 2007); Reding v. Gallagher (In re Childs), 342 B.R. 823 (M.D. Ala. 2006).   In Part II above, the undersigned proposed to bifurcate this Adversary Proceeding, proposing to try Counts I and VI first, holding the remaining Counts

for disposition at a later time. The undersigned is of the view that the Defendants are not entitled to a jury trial on either Count I or Count VI.

Defendants claim an entitlement to a jury trial under the Seventh Amendment to the United States Constitution. The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" U.S. Const. amend. VII. A "suit at common law" adjudicates legal rather than equitable rights." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790 (1989). The Supreme Court provided a three-step analysis to determine whether there is a right to a jury trial.

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. [citation omitted]. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

Id., at 42.

In a case recently handed down by the United States Court of Appeals for the First Circuit, the court considered whether there was a right to trial by jury in a turnover proceeding. The court stated, "We conclude that there was no common law turnover action and to the extent any analogy may be made (for there was no common law equivalent) the action was equitable in nature. We also conclude that the nature of the remedy is equitable." Braunstein v. McCabe, 571 F.3d 108, 118 (1st Cir. 2009) (applying the Granfinanciera test to turnover proceeding and

13

affirming order of the District Court denying jury trial). While the property in Braunstein was insurance proceeds and the property here is a corporation, both are actions by a Trustee to recover property of the estate. See id. at 122 ("[A]n action to recover possession of property belonging to the estate at the time of the filing . . . invokes the court's most basic equitable powers to gather and manage property of the estate."). The Supreme Court has held that

> courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity. . . The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.

Pepper v. Lipton, 308 U.S. 295, 304-05, 60 S.Ct. 238, 244 (1939); see also Young v. United States, 535 U.S. 43, 50, 122 S.Ct. 1036, 1041 (2002) (stating that bankruptcy courts are courts of equity and applying equitable tolling to period of limitations).

A Bankruptcy Court in Massachusetts recently issued a decision which is similar to the case at bar. Murphy v. Felice (In re Felice), 480 B.R. 401 (Bankr. D. Mass. 2012). In Felice, a trustee in bankruptcy brought suit seeking a declaration that a beneficial interest in a trust was property of the bankruptcy estate. The Court in Felice found that the action was equitable in nature and for that reason, there was no right to a jury trial. Id. at 422. Count I of the Trustee's complaint here is nearly identical, except that in this case, Trustee Hamm contests the estate's entitlement to stock in a corporation, while in Felice, the underlying property was a beneficial interest in a trust.

14

Further support for the proposition that a turnover action is equitable in nature may be found in a review of bankruptcy fundamentals. When a debtor files a petition in bankruptcy, an estate is created. 11 U.S.C. § 541. A trustee is appointed, whose primary function is to administer the estate. 11 U.S.C. §§ 701-04. Chief among these is that the trustee shall "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." § 704(a)(1); see Braun stein, 571 F.3d at 119 ("The trustee's gathering of the 'property' of the estate, as both that property and the exclusions have been defined by Congress, is inherently an equitable task."). In aid of this function, a trustee may demand from anyone in possession of property of the estate, that they turn over such property to the trustee. 11 U.S.C. § 542. Counts I and VI of the Trustee's complaint here is an attempt by a trustee in bankruptcy to obtain property of the estate from a debtor's spouse, who he contends is unlawfully withholding it from him.

This process may be illustrated in two bankruptcy court decisions. In Freehling v. Nielson (In re F&C Services, Inc.v. Nelson), 44 B.R. 863 (Bankr. S.D. Fla. 1984), a trustee in bankruptcy brought suit to recover property from a corporation which he claimed was the alter ego of the debtor. The debtor, F&C Services, Inc., an insurance agency, fell on hard times. The principal of the debtor formed another corporation and transferred all of the assets and business activities into the new corporation. The bankruptcy court found that the new corporation was the mere alter ego of the debtor and ordered the turnover of all of the assets of the new corporation to the trustee. Id. at 870.

A second decision was recently written by the Bankruptcy Court in the Southern District of Alabama. In re Williams, 2012 WL 1436724 (Bankr. S.D. Ala.)(Order dated April 25, 2012).

15

In Williams, the debtor held legal title to his residence as a joint tenant together with his nondebtor spouse. The debtor in Williams contended that he did not own any equitable interest in the residence, only bare legal title. The trustee brought suit seeking a determination of the debtor's ownership. After an evidentiary hearing, the Bankruptcy Court held against the trustee, finding that the nondebtor spouse held title pursuant to a resulting trust, notwithstanding the fact that the property was held in a joint tenancy. Id. at *4. In other words, the form in which title to the residence was held did not bind the Bankruptcy Court in Williams, rather it looked to the equities.

The decisions in F&C Services and Williams provide examples of bankruptcy courts defining the estate and, where necessary, ordering the turnover of property of the estate. Defining property of the estate is a "critical feature[] of every bankruptcy proceeding," Central Va. Cmty. Coll. v. Katz, 546 U.S. 356, 363, 126 S. Ct. 990, 996 (2006), and is a routine exercise of the Bankruptcy Court's *in rem* jurisdiction, Tenn. Student Ass'n Corp. v. Hood, 541 U.S. 440, 447-48, 1910-1911 (2004) (*in rem* jurisdiction "permits [the bankruptcy court] to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question.'"). This process is necessary for the proper operation of a bankruptcy proceeding. In most instances, there is no dispute as to what is, or is not, property of a bankruptcy estate. Moreover, once a trustee has identified the property of the estate, he can usually obtain control of the property without resorting to processes of the bankruptcy court, such as turnover proceedings. The case at bar, along with F&C Services and Williams, provide examples as to why the turnover powers are necessary. This process is inherently equitable; therefore there is no right to a jury trial on Counts I and VI.

16

In Counts II, III, IV, V and VI, the Trustee seeks a money judgment for amounts transferred by McIntyre Land to Mitzi. In the view of the undersigned, this question is controlled by Granfinanciera, where the trustee brought a fraudulent conveyance action, seeking solely monetary relief.

> Whether the trustee's suit should be at law or in equity is to be judged by the same standards that are applied to any other owner of property which is wrongfully withheld. If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee to-day as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.

Granfinanciera, 492 U.S. at 44 (citing 1 G. Glenn, Fraudulent conveyances and Preferences § 98, pp. 183-184 (rev. ed. 1940)). As the Trustee's action, insofar as he seeks a money judgment, is indistinguishable from Granfinanciera, it follows that as to those counts which seek monetary relief (Counts II, III, IV and V), the Defendants are entitled to trial by jury.

Count VIII, seeking the sale of property of the estate pursuant to 11 U.S.C. § 363(k), and Count IX, the Trustee's objection to discharge, are clearly not legal claims for which there is a right to a jury trial. In Count VIII, the Trustee seeks a determination that Innes owns an interest in the property and he further seeks to sell the entire interest in the property and a division of the proceeds between the estate and Mitzi, the co-owner. See FDIC v. New London Ent., Ltd., 619 F.2d 1099, 1102-03 (5th Cir. 1980) (finding that a foreclosure proceeding was equitable in nature and therefore there was not right to trial by jury).

In Count IX, the Trustee objects to Innes receiving a discharge pursuant to 11 U.S.C. § 727(a). It is well established that there is no right to trial by jury in a proceeding objecting to a debtor's discharge as it is inherently equitable in nature. Longo v. McLaren (In re McLaren), 3 F.3d 958, 960-61 (6th Cir. 1993); N.I.S. Corp. V. Hallahan (In re Hallahan), 936 F.2d 1496, 1505-08 (7th Cir. 1991); Busey v. Fleming (In re Fleming), 8 B.R. 746, 747-48 (N.D. Ga. 1980); In re Sneider, 59 F.R.D. 391 (S.D. N.Y. 1973); Stanbrough v. Valle (In re Valle), 469 B.R. 35 (Bankr. D. Idaho 2012); Smith v. Bandy (In re Bandy), 237 B.R. 661, 666-69 (Bankr. E.D. Tenn. 1999); Mattson v. Hawkins (In re Hawkins), 231 B.R. 222, 234 (Bankr. D. N.J. 1999); Bankers Trust Co. v. Hohenberg (In re Hohenberg), 1994 WL 230374 (Bankr. W.D. Tenn. May 20, 1994).

In summary, the undersigned is of the view that Defendant Mitzi McIntyre is entitled to a jury trial on Counts II, III, IV and V, as the Trustee is seeking a money judgment against her. As the remaining Counts are equitable in nature, there is no right to trial by jury. Because Mitzi McIntyre has timely demanded a jury trial and because she does not consent to trial before the undersigned Bankruptcy Judge, if it is necessary to try Counts II, III, IV and V, then the undersigned is of the view that the District Court should withdraw the reference. Because the undersigned proposes to try Counts I and VI first, the undersigned respectfully requests that the District Court defer taking action on Counts II, III, IV and V, until the undersigned advises as to the outcome in Counts I and VI.

## V. THE TRUSTEE'S MOTIONS TO COMPEL

The Trustee has filed two motions to compel discovery. (Docs. 27, 28). The Defendants have filed objections, many of which may have become moot in light of this Memorandum Decision and related orders. In light of this, and the turbulence resulting from all of the procedural wrangling here, the undersigned is of the view that he should order the parties to conduct a Rule 26(f) conference. In addition, the undersigned will order the parties to confer regarding their discovery dispute pursuant to Rule 37(a)(1) and report to the Court.

## VI. CONCLUSION

The Defendants motions to dismiss are DENIED, except as to Count X. The motions to dismiss are GRANTED as to Count X, which is DISMISSED WITH PREJUDICE. The undersigned proposes to proceed with discovery and to go to trial on Counts I and VI. After the conclusion of the trial on Counts I and VI, the undersigned will report further to the District Court. The undersigned recommends that the District Court DENY the motions to withdraw the reference as to Counts I and VI, and defer as to the remaining Counts pending a report from the Bankruptcy Court.

Done this 8th day of March, 2013.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Jared H. Loftin, Attorney for Plaintiff
Robert DeLoach Reynolds, Attorney for Plaintiff
Lee R. Benton, Attorney for Innes T. McIntyre IV
Scott M. Speagle, Attorney for Mitzi McIntyre & McIntyre Land Co.